■ JOANNES DEJONG et al., Respondents, v BERNARD MANDELBAUM et al., Appellants.—In an action to recover damages for breach of contract, the defendants appeal from a judgment

of the Supreme Court, Westchester County (Beisheim, J.), entered April 12, 1985, which, upon the plaintiffs' cross motion for summary judgment, is in favor of the plaintiffs and against them in the amount of $30,672.22.

Judgment reversed, on the law, with costs, cross motion denied, upon searching the record, summary judgment is granted to the defendants dismissing the complaint and vacating the plaintiffs' lis pendens on the property, partial summary judgment as to liability is granted to the defendants on their counterclaims, and the matter is remitted to the Supreme Court, Westchester County, for an inquest as to what damages, if any, the defendants have incurred in excess of the amount of the contract deposit.

On July 9, 1984, the parties entered into an agreement for the purchase of real property. The plaintiff purchasers paid the defendant sellers the sum of $27,000 as a deposit on the contract. The plaintiffs' subsequent survey of the property, obtained on or about August 19, 1984, disclosed a 9.3-foot encroachment running from the defendants' property onto the adjoining property, consisting of a fence and patio. The survey also disclosed that the swimming pool violated the side-yard setback requirements of the zoning ordinance of the Town of New Castle. Neither party was aware of the encroachment or the side-yard setback violation.

Upon receiving timely notification, the defendants moved promptly to rectify the situation. On October 3, 1984, the defendants obtained a setback variance with respect to the location of the swimming pool from the Zoning Board of Appeals of the Town of New Castle. The swimming pool problem was, therefore, resolved. Further, the defendants obtained a grant of an easement from the contiguous property owners which enabled the defendants and their assigns to maintain the subject portion of their fence and patio upon the neighbors' property as long as the fence and patio stand. Notwithstanding these expeditious efforts, the plaintiffs rejected title as unmarketable and/or uninsurable and unsuccessfully demanded the return of their deposit money. Special Term granted summary judgment in the plaintiffs' favor directing return of the down payment and the net costs of the title examination and survey, which together amounted to the principal sum of $28,513.

The existence of an easement as to the use of adjoining property does not constitute an encroachment upon the property to be sold so as to render title unmarketable (see, Eastman v Horne, 205 NY 486). It is important to distinguish

between: "a case where there is an encroachment of an adjoining building upon the property to be conveyed, thus preventing the vendor from conveying and giving the possession of all the property that he was bound to convey, and a case where the objection is that, although the vendee obtains all of the land that he was to obtain, a portion of the building is erected upon the land of another * * * Where, however, the objection is that a portion of the building is erected upon land the title to which the vendee is not entitled to under the contract, if, at the time of the closing, there was a valid agreement with the owner of the adjoining land which was encroached upon by the erection of the building to be conveyed by which the vendee would be entitled to maintain the building as it then existed, it would seem to be quite clear that the vendee would not be justified in refusing to accept title, as by the conveyance he would receive all that he was entitled to under the contract, for he would obtain all of the land that was to be conveyed and the building upon the land, with the right to maintain such building as it then existed" *(Volz v Steiner,* 67 App Div 504, 508).

Further, marketable title has been defined as good title, free and clear of encumbrances or material defects *(see, Cerf v Diener,* 210 NY 156). The test of whether a title is marketable is whether the purchaser can peacefully enjoy and use the property for his intended and announced purposes.

In the instant case, since the defendants obtained and recorded an easement, there was no reason for the plaintiffs to believe that they could not peacefully enjoy and use the property for their intended purposes.

Furthermore, the defendants fully complied with their obligation to offer such title "as any reputable title company" would approve and insure. The defendants submitted an affidavit from the legal counsel of the plaintiffs' title company which indicated that it would fully insure the subject property together with the plaintiffs' right of easement onto the adjoining property. Clearly, the defendants could not have met their burden to produce insurable title any better than by obtaining the express representation of the plaintiffs' own title insurer.

Accordingly, if the plaintiffs had taken title, they would have obtained more than what they bargained for. They would have received the exact property described in the contract, together with an easement for the use and enjoyment of additional property.

Under the circumstances, Special Term erred in determin-

ing that the defendants could tender neither marketable nor insurable title to the plaintiffs.

Finally, since the defendants were ready, willing and able to convey both marketable and insurable title to the plaintiffs and the plaintiffs refused to close title, the defendants are entitled to retain the contract deposit (see, *Dmochowski v Rosati,* 96 AD2d 718). Further, this case is remitted to the Supreme Court, Westchester County, in order to conduct an inquest as to what damages, if any, the defendants have incurred in excess of the amount of the contract deposit (see, *Colonial Diversified v Assured Holding Corp.,* 71 AD2d 1011; 6 Warren's Weed, New York Real Property, Vendee and Vendor, § 4.05; CPLR 3002 [e]). Weinstein, J. P., Rubin, Eiber and Spatt, JJ., concur.