(94 Misc. Rep. 443)

## EPPIG v. GRUHN.

(Supreme Court, Special Term, Kings County. December, 1915.)

1. SPECIFIC PERFORMANCE ☞101—CONTRACTS ENFORCEABLE—OBJECTIONS TO TITLE.

Where the purchaser of land knew of a slight encroachment of the front of the building over street lines as early as December 15, 1914, but made no objection till January 25, 1915, the day before the time for closing of contract, and time was not the essence of the contract, equity would give the vendor a reasonable time to remove the objection, and decree specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 290, 295, 311–317; Dec. Dig. ☞101.]

2. JUDGMENT ☞588—CONCLUSIVENESS—MATTERS CONCLUDED.

In an action by the purchaser of land to recover a deposit made on the price, because of an encroachment of the building over the street lines, where the seller denied that the purchaser was ready and willing to perform at the date fixed for closing the contract, and alleged his own readiness to perform, and asked specified performance, but on account of the omission from his amended answer of the prayer for specific performance the parties were remanded to the action at law, in which evidence offered on behalf of the seller that the buyer was not ready and willing to perform was excluded, the judgment is not res judicata in an action by the seller for specific performance after removal of the encroachment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1090; Dec. Dig. ☞588.]

Action by Theodore C. Eppig, individually and as executor of the last will and testament of Joseph Eppig, deceased, against Otto Gruhn, for specific performance of contract for the sale of real estate. Judgment for plaintiff.

John J. Haggerty, of Brooklyn (Meier Steinbrink, of Brooklyn, of counsel), for plaintiff.
Kramer, Cohn & Meyer, of Brooklyn, for defendant.

KELLY, J. [1] I have no hesitation on the evidence in deciding that the plaintiff makes out a case for the intervention of a court of equity to decree specific performance. The defendant, who had purchased the property under contract dated October 1, 1914, changed his plans. He did not want the property; he asked adjournment of the closing day; he asked to be relieved of his contract. The matter was adjourned from time to time until January 26, 1915. On the day before, January 25, 1915, defendant for the first time notified the plaintiff of his objection to the title because of an encroachment of part of the front of the building over the street lines. There was no question

that the encroachment existed. The defendant knew of it as early as December 15, 1914, when his lawyers received the survey, but he said nothing about it. The plaintiff knew of it, but it had stood for many years, and he had no intimation that the defendant objected to it. It was easily removable. If defendant had called attention to it when he received his survey in December, 1914, it could have been entirely removed before January 26, 1915, the day set for closing. Upon receipt of the notice of defendant's objections on January 25th or 26th, plaintiff promptly agreed to remove the encroachment or to make allowance to defendant for the cost of removing it.

There is some claim that plaintiff refused to recognize the encroachment as an objection to the title, and it may be that on the closing day the relations of the parties were a trifle strained by what plaintiff evidently regarded as bad faith on defendant's part; but there can be no doubt that the offer to remove the encroachment was made at once, and in writing, on the same day. And the plaintiff did in fact proceed to remove it, and did remove it completely by March 3, 1915, and so notified the defendant. Under all the evidence it is apparent that time was not an essential part of the agreement, at any rate as far as defendant was concerned, and I think equity would give the vendor a reasonable time to remove the objection and decree specific performance.

[2] If I am correct in this view of the case, the plaintiff executor has had an unfortunate experience in the courts. Immediately upon the rejection of the title, the defendant sued him in an action at law to recover the deposit paid on signing the contract and the necessary expense of searching the title. The plaintiff in that suit (the defendant here) necessarily alleged that upon the day fixed for closing he was *ready and willing* to take title. The executor answered, denying that Mr. Gruhn was ready and willing to take title. He set up an equitable defense, pleading that he has asked for a reasonable time to remove the objections to the title, which was not accorded him. He pleaded his readiness and willingness to carry out the contract, and, while he asked that the complaint be dismissed, he also prayed for specific performance. He served what is described as a "supplemental amended answer" after the encroachment had been removed, alleging the fact, and alleging that he has been at all times ready to carry out the contract," and is now in a position to offer, and does offer, the plaintiff a good and marketable title." It is true that the prayer for relief in this "supplemental amended answer" omits the demand for specific performance. But the nature of the pleading is plain. So far as it was a supplemental answer, the original pleading was still before the court, and there can be no doubt that the executor was at all times offering to perform the contract, and that he was insisting that Mr. Gruhn was not acting in good faith.

It appears that the issue raised upon the pleadings was noticed for trial at Special Term in equity. It is intimated that the prayer for relief in the "supplemental amended answer" omitted the demand for specific performance, asking only a dismissal of the complaint. But the pleadings were before the court, with the executor offering to·

perform and demanding specific performance in the original answer. I do not understand that a litigant may be denied a hearing in equity because of an apparent omission in his prayer for relief. If the prayer for relief had been omitted altogether, the contention of the executor was plain, and it would appear that an equitable issue was presented.

However, the parties, having been turned out of equity, went to trial before a jury on the law side of the court. But when the executor attempted to prove that Mr. Gruhn was not acting in good faith, that he was not in fact *ready and willing* to close the title on January 26, 1915, the trial court refused to hear the evidence, on the ground that no such issue was presented, and directed a verdict in favor of Mr. Gruhn for the amount of his deposit and expenses. It will thus be seen that the executor, the plaintiff herein, has been so far denied the right to present his case in the action at law, or, more properly speaking, in the action commenced as an action at law, but which I think was properly triable in equity under the answer. In this situation he commences the suit at bar in equity for specific performance. He is confronted by the judgment in the trial before the court and jury, which the defendant here, Mr. Gruhn, insists is res adjudicata.

This is the more serious question in this case. The executor has appealed from the judgment in the former suit, but the appeal has not been argued, and the judgment is in full force and effect. Under the familiar principle that the judgment is conclusive between the parties, as to the facts litigated or which might have been litigated in the former action, the defendant here insists that it is a judgment that on the day set for closing the title he, the defendant, was ready and willing to perform, but that the executor plaintiff was not ready, willing, and able to perform. The judgment in the printed case on appeal is before me. I note that the executor has been denied the right to offer evidence in support of his case, and this upon Mr. Gruhn's objection.

It may be that the appeal courts will reverse the judgment so rendered by direction of the court. But is it decisive on the issue submitted here? If such is the rule, it would seem to result in the miscarriage of justice. The executor should, it seems to me, have been accorded a hearing in the former case, either in equity, to which he has resorted, or upon the law side of the court, to which he was sent. I think that, when it appears that the former litigation did not in fact determine the question presented in the second suit, the court in the second suit is called upon to decide the question. When the executor introduced the proceedings in the suit at law in evidence, and it clearly appears that his equitable claims were excluded upon the objection of his adversary, where these facts appeared, and there is no controversy about them, I think the former judgment is not conclusive upon a court of equity in the second suit. The judgment in the first suit is the primary, but not the exclusive, guide. Clark v. Scovill, 198 N. Y. 279, 91 N. E. 800; Lewis v. Ocean N. & P. Co., 125 N. Y. 348, 26 N. E. 301. Extrinsic evidence may be offered to show that the issue offered was not litigated in the first action, and that it was in fact excluded on the objection of the party now seeking to profit by

the former decree under the doctrine of res adjudicata. "There is support for the contention that the company [i. e., defendant here] is estopped to urge that a defense which was excluded upon its objection was involved in the action and concluded by the judgment." Virginia-Carolina Co. v. Kirven, 215 U. S. 252, 259, 30 Sup. Ct. 78, 54 L. Ed. 179; Rose v. Hawley, 133 N. Y. 315, 31 N. E. 236.

I think it would be an unfortunate commentary upon our forms of procedure if the litigant can in effect be denied his day in court by judgment which is the result of his being driven from one court to another, as plaintiff has been. For the reasons stated, the judgment will be for the plaintiff with costs.

Judgment for plaintiff.